# United States District Court
## for the
## Eastern District of Washington

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 08, 2022

SEAN F. McAVOY, CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | )<br>) |
| v. | )<br>) Case No.  2:22-MJ-00393-JAG |
| GAGE LYLE FORSBERG and BRADY DAVID TOWNER, | )<br>)<br>) |

## CRIMINAL COMPLAINT

I, Timothy Wihera, the complainant in this case, state that the following is true to the best of my knowledge and belief. On or about the date(s) October 26, 2022, in the county of Spokane in the Eastern District of Washington, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi), 846, | Conspiracy to Distribute 40 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl |

This complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Timothy Wihera, SA ATF
_____
Printed name and title

☐ Sworn to before me and signed in my presence.
☒ Sworn to telephonically and signed electronically.

Date:  November 8, 2022

_____
Judge's signature

James A. Goeke, United States Magistrate Judge
_____
Printed name and title

City and state:    Spokane, Washington

AUSA:  CAB

County: Spokane

*In Re Affidavit in Support of Criminal Complaint as to Gage Lyle FORSBERG and Brady David TOWNER*

State of Washington     )
                                          ss
County of Spokane        )

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Timothy Wihera, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of a criminal complaint seeking the arrest of Gage FORSBERG and Brady TOWNER, for Conspiracy to Distribute 40 Grams or More of a Mixture or Substance Containing a Detectable Amount of Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi), 846.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, & Explosives ("ATF") and have been since December 2018.  Prior to serving as a federal agent, I served as a police officer in the City of Colorado Springs, Colorado, for over four years with primary duties as a patrol officer.  During my time as a law enforcement officer, I have participated in numerous investigations into the distribution of controlled substances and violations of federal firearms

Affidavit of Special Agent Wihera - 1

laws.

3.  The facts set forth below are based upon (1) my own personal observations; (2) reports and information provided to me by other law enforcement agents or government agencies; (3) evidence collected through investigative operations. Because this affidavit is being submitted solely for establishing probable cause to support a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have only set forth facts necessary to support the authorization of the requested arrest warrant and criminal complaint.

## INVESTIGATION

4.  On October 26, 2022, multiple ATF agents participated in a controlled purchase operation involving the purchase of fentanyl-laced pills from Gage Lyle FORSBERG ("FORSBERG"), which was facilitated by Brady David TOWNER ("TOWNER"). During the operation, I monitored radio traffic. I have also consulted with agents who participated in the controlled purchase operation, and I have reviewed portions of audio/video recordings captured during the controlled purchase. From this, I am aware of the events described herein.

5.  On October 26, 2022, an ATF Confidential Informant ("CI")[1]

---

[1] The CI is cooperating with law enforcement for monetary compensation and has done so for over a decade. In that role, the CI has completed multiple controlled

Affidavit of Special Agent Wihera (22-mj-00393-JAG) - 2

arranged to purchase approximately 500 fentanyl-laced pills from an individual known to the CI only as "Rob" at a local convenience store in the Spokane, Washington area. That same day, at approximately 1450 hours, two ATF undercover agents (hereinafter "UCA-1" and "UCA-2"or "UCAs" collectively), and the CI met with "Rob" as previously arranged.

      6.      When the UCAs and CI arrived, "Rob" advised he would need to go to his source to obtain the ordered fentanyl pills. To facilitate this, utilizing an undercover vehicle, the UCAs and CI transported "Rob" to a local supermarket in the Spokane, Washington area. During the ride, "Rob" was talking on the phone and told person(s) on the other end of the call something to the effect of tell "Gage" they were in a hurry. When they arrived at the supermarket parking lot, "Rob" exited the undercover vehicle, and went to the other side of the parking lot. After a few minutes, "Rob" directed the UCAs and the CI to park next to a green Ford Explorer displaying Washington license plate CEH4203[2]. UCA-1 and the CI,

---

purchases of firearms and controlled substances. ATF considers the CI a credible and reliable source of information. The CI's known felony criminal history involves only a conviction for an assault over twenty years ago. The CI does have a conviction from 1995 for false information to an officer, an incident for which the CI paid a $94 fine.

[2] Per Washington State Department of Licensing ("WA DOL") records, this vehicle is registered to Brady TOWNER.

Affidavit of Special Agent Wihera (22-mj-00393-JAG) - 3

exited the undercover vehicle and approached the passenger side of the green Ford Explorer. In very plain view near the center console area of the Ford Explorer, UCA-1 observed a large quantity of blue pills consistent with the common appearance of fentanyl-laced pills. UCA-2 remained in the undercover vehicle.

7. Upon UCA-1 and the CI's arrival at the green Ford Explorer, the front passenger, later identified as TOWNER (discussed below), exited the vehicle. UCA-1 and the CI stood by the open passenger door and began negotiating with the male in the driver's seat of the vehicle, later identified as FORSBERG (discussed below). During the discussion, UCA-1 could see FORSBERG had a silver-colored revolver on the seat of the vehicle underneath his leg. UCA-1 asked FORSBERG if the firearm was for sale. FORSBERG said it was a ".410" (a reference to the caliber of firearm) and then produced a second firearm. FORSBERG advised that since he just bought that second firearm, he may be willing to sell the first firearm (the silver-colored .410 revolver).

8. From the undercover vehicle, UCA-2 saw TOWNER approach the passenger side of the green Explorer, near where the CI and UCA-1 were standing discussing the purchase with FORSBERG. When TOWNER arrived at the green Ford Explorer, UCA-2 saw TOWNER retrieve what appeared to UCA-2 to be a firearm from the open-door area of the vehicle. Below are two screen grabs from one of the audio/video recordings of the controlled purchase. They depict

Affidavit of Special Agent Wihera (22-mj-00393-JAG) - 4

TOWNER standing behind UCA-1 and the CI. In the image on the left, the revolver is visible in TOWNER's left hand (yellow directional arrow added for ease of reference). In the image on the right, TOWNER's identity is verifiable when he stepped back after retrieving the firearm and concealed the revolver in his jacket:



9. TOWNER's identify can be confirmed based on the below images. On the left are two photographs taken by surveillance units of TOWNER during the controlled purchase. On the right is TOWNER's WA DOL driver's license photograph:

  

Affidavit of Special Agent Wihera (22-mj-00393-JAG) - 5

For clarification, the recording device used from which I obtained the screen grabs with the firearm (paragraph 8, above) reverses images, so TOWNER's watch appears to be on the opposite wrist when compared to the above surveillance images.

10. FORSBERG then asked multiple times for the person with the money to get into the car with him. UCA-1 and UCA-2 (from the undercover vehicle) both saw TOWNER move to a position behind UCA-1. Based on training and experience, both UCAs believed TOWNER was moving to a position of tactical advantage over UCA-1 and the CI. UCA-2 feared TOWNER and FORSBERG were preparing to rob UCA-1 and the CI. UCA-2 instructed UCA-1 and the CI to depart from the controlled purchase.

11. UCA-1 and the CI returned to the undercover vehicle and began to depart. "Rob" did not return to the undercover vehicle. As the UCAs and the CI were departing in the undercover vehicle, FORSBERG exited the green Ford Explorer and approached the undercover vehicle. FORSBERG told the UCAs he was not going to rob them and produced a bag of approximately 700 blue pills. FORSBERG proceeded to sell those pills to UCA-1 for $850.00. After the sale was complete, the UCAs and CI departed in the undercover vehicle.

12. Surveillance officers saw FORSBERG and TOWNER depart the grocery store parking lot in the green Ford Explorer with a third unidentified male

Affidavit of Special Agent Wihera (22-mj-00393-JAG) - 6

in the vehicle. Based on the situation, to include the UCAs observations, agents determined public safety dictated officers attempt to take immediate enforcement action.

13. Agents in unmarked government vehicles followed the green Explorer to the area of Airway Heights, Washington. FORSBERG remained the driver of the vehicle. Once in Airway Heights, multiple unmarked government vehicles equipped with emergency red and blue lights and sirens initiated their emergency equipment and attempted to conduct a traffic stop on the vehicle. The green Ford Explorer failed to yield and ultimately fled, driving in a reckless manner. To limit risk to the public, agents did not pursue the vehicle.

14. Agents later processed the pills purchased from FORSBERG. The pills were not field-tested; however, I believe there is probable cause to conclude they contain fentanyl. In addition to the representations made by "Rob" (noted above), and my training and experience, the pills are round and blue, which is consistent with other seized pills in this District that the Drug Enforcement Administration ("DEA") Laboratory has confirmed contained fentanyl.

15. Agents packaged the pills in two DEA evidence bags. Each of the DEA bags has an approximate weight of 30 grams. The total weight of the two packages was 125.4 grams. With the subtraction of the weight of the two DEA bags (i.e. 60 grams), the weight of the purchased blue pills is approximately 65.4

Affidavit of Special Agent Wihera (22-mj-00393-JAG) - 7

grams.

16.     As noted above, the driver of the green Ford Explorer who sold the pills to UCA-1 was identified as FORSBERG.  In addition to the statement made by "Rob" (above), FORSBERG has a documented very distinctive tattoo.  Below on the left is a booking photograph of FORSBERG.  Below on the right is a screen grab from an audio/video recording of the controlled purchase.  The distinctive tattoo on the left side of FORSBERG's neck is readily identifiable in both photographs:

 

**CONCLUSION**

17.     Based on the foregoing, I submit that there is probable cause to believe that on October 26, 2022, Gage Lyle FORSBERG and Brady David TOWNER committed the Conspiracy to Distribute 40 Grams or More of a Mixture or Substance Containing Fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(vi), 846.

Affidavit of Special Agent Wihera (22-mj-00393-JAG) - 8

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

Respectfully submitted,

*/s/ Timothy Wihera*

Timothy Wihera
Special Agent
Bureau of Alcohol, Tobacco,
Firearms, & Explosives

Sworn to telephonically and signed electronically on this 8th day of November, 2022.

*/s/ James A. Goeke*

James A. Goeke
United States Magistrate Judge

Affidavit of Special Agent Wihera (22-mj-00393-JAG) - 9